UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re                                             Case No. 806-71739-478

      RANDY COLGATE,                    Chapter 7

                        Debtor.
---------------------------------------------------------x

# MEMORANDUM DECISION AND ORDER

*A p p e a r a n c e s :*

                        Office of the United States Trustee
                  By: Alfred Dimino, Senior Trial Attorney
                           560 Federal Plaza
                         Central Islip, NY 11722

                         Stuart P. Gelberg, Esq.
                        *Attorney for Randy Colgate*
                         600 Old Country Road
                       Garden City, New York 11530

This matter is before the Court pursuant to a motion made by the Office of the United States Trustee ("U.S. Trustee") seeking dismissal of Randy Colgate's petition under 11 U.S.C. § 707(b)(1) and/or (3) (the "Motion"). Based on the facts of this case and the relevant case law interpreting § 707(b), the Court grants the Motion. The following constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

## FACTS

On July 26, 2006, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. The petition indicates that the Debtor resides at 721 Brower Avenue, Franklin Square, New York ("Residence") and that he has no ownership interest in the Residence. The Residence is owned by Sheila Rogers, the Debtor's mother in law. The Debtor lists assets aggregating $25,795.17, including $9,000 in IRA accounts and $10,840.00 for the value of automobiles owned by the Debtor. All of the Debtor's assets are listed as exempt under the New York C.P.L.R. Schedule "D" lists one secured debt, a car loan for a 2003 Chrysler Town & Country LX minivan with a balance due of $13,945.34, which has approximately 33 months remaining on the car loan. The Debtor claims $83,064.24 in general unsecured debt, owed to seventeen retail credit card companies. The Debtor's petition indicates that he is an individual with consumer/non-business debt.

According to the Debtor's Schedule "I" the Debtor is married, with two minor children. His non-filing spouse is currently not employed. The Debtor has been employed by Professional Graphics as a sales manager for the past six years. Debtor's Schedule "I" also reflects that he has monthly gross income of $5,966.66, he has aggregate payroll deductions of $865.42 and a total monthly net income of $3,678.42. The Debtor's Schedule "J" reflects aggregate monthly

expenses of $5,470.92, or $1,792.50 more than his listed net income.

Despite the fact that the Debtor's schedules reflect an excess of monthly expenses compared to monthly net income, the Debtor's actual monthly income has been under-reported and the Debtor's monthly expenses appear to be overstated or unsupported. According to the Debtor's W-2 statement for 2006, the Debtor's gross wages were $76,980.04, or $6,415 per month. After deducting his pre-tax health insurance premiums of $10,385.04, the Debtor had gross taxable wages of $66,595.00. This amounts to monthly gross taxable wages of $5,549.58. After reducing this by $1,563.67 to reflect payroll deductions, the Debtor's monthly net income amounts to $3,985.91, which is $307.49 more than what the Debtor listed on Schedule "I".

In addition to under-reporting his income, the Debtor's tax returns reflect that the Debtor over withholds from his wages which produces significant tax refunds on an annual basis. In 2002, the Debtor received a refund of $5,424.00; in 2003, the Debtor received a refund of $7,427.00; in 2004, the Debtor received a refund of $7,215.00; and in 2005, the Debtor received a refund of $6,820. Given a monthly net income of $3,985.91, and $568.33 per month in tax refunds, the Debtor's actual available monthly income is at least $4,554.24, which is $875.82 more than what the Debtor listed on Schedule "I".

These revised income amounts are also reflected in Debtor's HSBC bank statements for the first nine moths of 2006, which encompasses both pre and post petition periods. In fact, these bank statements reflect average deposits, including a monthly pro rata average of tax refunds received, of $6,347.12. This is $876.20 more than the Debtor's claimed monthly

expenses of $5,470.92. [1]

Among the Debtor's claimed monthly expenses on Schedule "J" are the following:

1) rent - $1,575.00

2) food for family of four - $1,000.00

3) laundry/dry cleaning - $250.00

4) transportation - $450.00

5) auto installment payment - $426.99

6) auto insurance - $202.93

7) commuting expense - $260.00

8) after school activities - $130.00; and

9) nursery school tuition - $215.00

When questioned about these expenses, the Debtor was unable to satisfy the Court that certain expenses were accurate. First, the Debtor claims to pay monthly rent in the amount of $1,575.00 to his mother in law, Sheila Rogers, who owns the Residence. However, based on the Debtor's testimony and documentary evidence, including ATM cash withdrawal records, the Debtor actually pays approximately $900.00 per month to Sheila Rogers for rent. In fact, as of March 12, 2007, the Debtor has not paid rent in more than three months. The Debtor also claims to have monthly laundry/dry cleaning expenses of $250.00. At the hearing, the Debtor testified

---

[1] At trial, the Debtor explained this discrepancy by testifying that the bulk of the additional funds in his bank account over and above his wages came from gifts received by the Debtor and his family. However, the Debtor had no documentation to support this explanation, and it is unlikely that the gifts to members of the Debtor's family add up to over $2,000 per month more than the Debtor's monthly income and pro-rated tax returns. Part of the additional funds also come from commissions received from the Debtor's employer.

that he needed to have his uniforms dry cleaned, but there was no evidence provided to support this expense.

The Debtor claims to have monthly transportation expenses of $450.00. This expense relates to the cost of gasoline and repairs to the Debtor's automobiles, and does not include the $260.00 monthly commutation expense for taking the Long Island Railroad to work. The Debtor could only substantiate auto repair expenses averaging $60.00 per month. The Debtor claims after school activity expenses of $130.00 per month for his eight year old child and his four year old child. The Debtor could not describe the activities included in this expense, but based on his check register for the calendar year 2005, he incurred a monthly expense averaging $59.00 for Little League, soccer and Boy Scouts activities. The Debtor's claimed nursery school expense of $215.00 per month will no longer exist as of July, 2007, as his youngest child will begin kindergarten in September, 2007.

The Debtor claims medical/dental expenses of $235.00. However, the Debtor's check register reflects smaller monthly amounts attributable to co-pays or deductible payments for this claimed expense. The Debtor did testify that his son has certain medical issues but has not provided a monthly cost for these expenses. With respect to the Debtor's charitable contributions, the Court notes that the Debtor could not fully substantiate this expense. The Debtor's check register reflects payments to "JCCWH" for the calendar year 2005 averaging $71.50 per month. The Debtor's check register reflects one payment to "JCCWH - School " in the amount of $1,000 for the time period of January 1, 2006 through July 19, 2006. There is another check made out to "JCCWH" in the amount of $500.00 for this same time period.

The Debtor has made "eve of bankruptcy" purchases. For example, within six months of

the petition date, the Debtor purchased a computer, furniture and other electronic equipment under deferred payment terms. The computer was purchased for $2,600.00 in January, 2006. With respect to the Debtor's account with Comp USA, the Debtor entered into a deferred payment arrangement which did not expire until three months after the filing, and minimal payments were made on this account.

Debtor testified that he sought credit counseling from Green Path Debt Solutions but that under the budget they compiled, repayment of his debts was not feasible. If such budget was prepared, it has not been provided and the underlying assumptions are incapable of being analyzed. During the year prior to the date the Debtor filed this petition, the Debtor's credit card debt increased significantly.

## DISCUSSION

Prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), § 707(b) of the Bankruptcy Code permitted the dismissal of a Chapter 7 case filed by an individual with primarily consumer debts if granting relief to the debtor "would be a substantial abuse of the provisions" of Chapter 7. 11 U.S.C. § 707(b). A presumption was made in favor of granting the relief sought by the debtor. *Id.* The Second Circuit established a totality of circumstances test to determine whether substantial abuse existed under § 707(b). *In re Kornfield*, 164 F.3d 778 (2nd Cir. 1999). The threshold issue to be determined by the court was whether the debtor had an ability to pay his or her debts. The remaining factors either mitigated or aggravated the debtor's ability to pay.

BAPCPA made significant changes to this section of the Bankruptcy Code, making it easier to find that a debtor's case should be dismissed. First, in subsection (b)(1), the standard

for dismissal of the case has been reduced from "substantial abuse" to "abuse." Second, there is no longer a presumption in favor of granting the relief requested by the debtor. Instead, a *presumption of abuse* now arises if a debtor's current monthly income is greater than the median family income in the State where the debtor resides for a family of the same or fewer number of individuals, and such income, reduced by certain amounts fixed under subsection (b)(2)(A)(ii), (iii) and (iv), and multiplied by 60 is not less than the lesser of 1) 25% of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or 2) $10,000.

If there is no presumption of abuse, or the presumption is rebutted, 11 U.S.C. § 707(b)(3) provides:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(I) of such paragraph does not arise or is rebutted, the court shall consider -
>
> (A) whether the debtor filed the petition in bad faith; or
>
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C. 707(b)(3).

It is clear from these changes to the Bankruptcy Code that Congress articulated a preference for repayment of debt, either in full or in part, when the financial situation of the debtor permits. The underlying policy of the amendments was to redress abuses in the bankruptcy system, and to ensure that truly needy debtors who had suffered a loss of employment, medical problems or other calamity obtained a discharge and a fresh start. As a result, the standard for finding cause to dismiss a debtor's case under § 707(b) is now

measurably lower.

In this case, the U.S. Trustee is moving under § 707(b)(1) and (b)(3), asserting that the totality of circumstances warrants a finding that granting the Debtor relief would amount to an abuse of the bankruptcy provisions. Prior to the enactment of BAPCPA, the Second Circuit adopted a "totality of circumstances" test to determine whether the debtor's filing constituted substantial abuse. *In re Kornfield,* 164 F.3d 778 (2nd Cir. 1999) ("*Kornfield*"). The test applied by the bankruptcy court, which was approved in *Kornfield*, is a two-part inquiry which first considers the debtor's ability to pay and then weighs other mitigating or aggravating circumstances. In evaluating a debtor's ability to pay, courts prior to the effective date of BAPCPA have considered the disposable income that a debtor would have available to pay creditors under a hypothetical chapter 13 plan. *In re Aiello*, 284 B.R. 756, 761 (Bankr. E.D.N.Y. 2002) (citing *In re Haddad*, 246 B.R. 27, 32 (Bankr. S.D.N.Y. 2000)).

After analyzing a debtor's disposable income and making a finding that the debtor would have an ability to pay creditors all or a portion of the debts owed over the lifetime of a chapter 11 or chapter 12 plan, courts then weighed other circumstances to determine whether there are any mitigating or aggravating factors warranting discharge of the debtor or dismissal of the case. Those factors include:

(1) whether the bankruptcy was filed as a result of sudden illness, calamity, disability or unemployment;

(2) whether the petition was filed in good faith;

(3) whether the debtor exhibited good faith and candor in filing his schedules and other documents;

(4) whether the debtor has engaged in "eve of bankruptcy purchases";

(5) whether the debtor was forced into chapter 7 by unforseen or catastrophic events;

(6) whether the debtor's disposable income permits the liquidation of his or her consumer debts with relative ease;

(7) whether the debtor enjoys a stable source of future income;

(8) whether the debtor is eligible for adjustment of his or her debts through chapter 13 of the Bankruptcy Code;

(9) whether there are state remedies with the potential to ease the debtor's financial predicament;

(10) whether there is relief obtainable through private negotiations, and to what degree;

(11) whether the debtor's expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities;

(12) whether the debtor has significant retirement funds, which could be voluntarily devoted in whole or in part to the payment of creditors;

(13) whether the debtor is eligible for relief under chapter 11 of the Bankruptcy Code; and

(14) whether there is no choice available to the debtor for working out his or her financial problems other than chapter 7, and whether the debtor has explored other alternatives.

*In re Carlton*, 211 B.R. 468 (Bankr.W.D.N.Y. 1997), *aff'd sub nom., Kornfield v. Schwartz (In re Kornfield)*, 214 B.R. 705 (W.D.N.Y. )*, aff'd, In re Kornfield,* 164 F.3d 778 (2nd Cir. 1999). Similar factors have been adopted in other circuits.

  While the standard for finding cause to dismiss a debtor's chapter 7 case has been lowered post - BAPCPA, courts still apply the factors enumerated above when deciding motions under § 707(b)(3). *See In re Oot,* ___ B.R. ___, 2004 WL 1464488 (Bankr. N.D. Ohio 2007)

(Amendments to a statute, specifically § 707(b)(3), are not to be construed as abolishing precedent set in prior case law absent a finding that such an alteration is clear from the words and context of the amendment); *In re Mitchell,* 357 B.R. 142 (Bankr.C.D.Cal.2006); *In re Schoen*, ___ B.R.___, 2007 WL 643295 (Bankr. D. Kan. 2007); *In re Pak*, 343 B.R. 239, 241 (Bankr. N.D. Cal. 2006); *In re Richie*, 353 B.R. 569, 576-77 (Bankr. E.D. Wis. 2006). The Court finds the reasoning of these cases to be persuasive, and shall apply the same test adopted in *Kornfield*, with the understanding that the standard for finding cause to dismiss a debtor's case is now lower.

Turning to the Debtor's ability to pay his unsecured creditors, it appears that the Debtor understated his income in the schedules to his petition. Based on the Court's calculations, the Debtor's actual monthly net income, including his tax refunds, equals $4,432.08.

The Court must now determine the extent to which the Debtor has disposable income available to pay creditors. The Debtor lists his monthly expenses as $5,470.92. However, based on the Debtor's testimony and the exhibits provided to the Court, some of these expenses need to be reduced or eliminated as they are undocumented or have been overstated.

Debtor has overstated his monthly rent expense, which he pays to his mother in law, by $675.00 per month. The Debtor also overstated his laundry and dry cleaning expenses by $150.00 per month. The Debtor had no documentary evidence to support such an unusually high monthly dry cleaning bill other than testimony that he had to dry clean his work uniform. With respect to the Debtor's medical expenses, the Debtor testified that his son had a medical condition requiring significant medical treatment, but his bank account statements and his check

register showed a few deductible payments. Based on the evidence provided to the Court, the Court concludes that the Debtor overstated his medical expenses by $85.00 per month. Debtor claims a monthly transportation expense of $450.00 over and above his auto payment, auto insurance, and commuting expenses on the Long Island Rail Road. This transportation expense, which is based on alleged auto repairs and gasoline expenses, was not supported by the documentary evidence. The Court finds that the Debtor overstated this expense by $200.00 per month.

      The Debtor claims a monthly expense for charitable contributions in the amount of $140.00. However, the Debtor can only substantiate charitable contributions averaging approximately $71.50 per month. Since the Debtor has not provided the Court with any evidence to support monthly contributions as claimed, the Court finds that the Debtor overstated this expense by $68.50 per month. The Debtor also claims a monthly expense for his children's after school activities in the amount of $130.00, but he only provided evidence of expenses for this category averaging $59.83 per month. Therefore, the Court finds that the Debtor overstated his expenses for this category by approximately $70.00 per month. Finally, the Debtor asserts a $215.00 monthly expense for his four year old's nursery school. The Debtor's child will be attending kindergarten in the fall, and this expense will end in June, 2007. Therefore, it should not be included in the Debtor's monthly budget.

      Based on the Court's calculations, the allowance for the Debtor's reasonable and necessary monthly expenses amounts to $4,007.42. If these expenses are deducted from the Debtor's actual monthly income of $4,554.24, the Debtor has a minimum of $546.82 per month to pay off his creditors, for a total of $32,809.20 over five years. The Debtor lists $83,064.24 in

unsecured debts.  If the Debtor was in a chapter 13 case, over sixty months, the Debtor could repay to unsecured creditors approximately 39% of their claims by devoting this monthly surplus to plan payments.

Having established that the Debtor has an ability to pay a substantial amount to his unsecured creditors, the Court now looks to the list of factors adopted by the Second Circuit to see if these factors militate towards dismissing the case or dismissing the Motion.  The Court notes that there is no longer a presumption in favor of granting the Debtor the relief requested, and the U.S. Trustee has the burden of proving that the Debtor's filing constitutes an abuse of the bankruptcy process.

The factors that apply in this case do not reveal any mitigating circumstances, but they do suggest certain aggravating factors.  The Debtor acknowledges that this petition was not filed as a result of increasing debt due to illness, unemployment or other emergency.  Rather, the Debtor's debts stem from overspending on credit cards for various items, including a computer and new furniture.  This factor weighs in favor of granting the Motion.

The most critical factor in this inquiry is that the Debtor did not exhibit good faith and candor in filing his schedules, nor did the Debtor provide adequate explanations regarding certain expenses.  For example, the Debtor could not provide full documentary support for a number of categories such as his charitable contributions and expenses for his children's after school activities.  The Debtor also significantly overstated his auto expenses, the amount of rent he was paying to his mother in law and his dry cleaning expenses.  The Debtor also failed to include his tax refunds in his schedules, and failed to adequately explain to the Court the source of the significant deposits made to his bank account on an irregular basis.  The Debtor claims

these funds are gifts, but the amount of each deposit, which ranges from $50.00 to over $1,000.00, does not support the Debtor's testimony. With these discrepancies and inaccuracies, the Court finds that the Debtor has not been entirely candid during the bankruptcy process.

The Debtor does appear to have a stable source of income, as he has been employed by his current employer for approximately six years. In determining the Debtor's ability to pay under a chapter 13 plan, the Court has not taken into account the Debtor's commissions he receives from his employer, which have been significant in the past. However, this additional income, if the Debtor continues to receive it as he has in the past, is further reason to grant the Motion. In the absence of any significant mitigating factors in favor of the Debtor's position, and in light of the numerous aggravating factors cited above, the Court grants the U.S. Trustee's Motion. The Debtor shall have twenty days to determine whether he wishes to have his case dismisses or converted to a case under chapter 13.

## CONCLUSION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

2.  For the reasons set forth above, the Motion is granted.  The U.S. Trustee has established, based on the totality of circumstances, that cause exists to dismiss the Debtor's petition under 11 U.S.C. § 707(b)(3).

3.  The Debtor's case shall be dismissed, unless the Debtor, within twenty days of entry of this Memorandum Decision and Order, elects to convert his chapter 7 case to a case under chapter 13.

So ordered.

Dated: Central Islip, New York
      May  31, 2007                                  By: */s/ Dorothy Eisenberg*_____
                                                       UNITED STATES BANKRUPTCY JUDGE